WOONSOCKET TEACHERS' GUILD, LOCAL 951, AFT

v.

WOONSOCKET SCHOOL COMMITTEE.

No. 2000–14–APPEAL.

Supreme Court of Rhode Island.

May 2, 2001.

Richard A. Skolnik, Providence, for Plaintiff.

Richard R. Ackerman, Woonsocket, for Defendant.

Present WILLIAMS, C.J., and LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This case came before the Court for oral argument on March 13, 2001, pursuant to an order that directed both parties to appear in order to show cause why the issues raised by this appeal should not be summarily decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown and that the issues raised by this appeal should be decided at this time. The facts insofar as pertinent to this appeal are as follows.

The Northern Rhode Island Collaborative program (NRIC) provides special education services for public school students

from many northern Rhode Island communities, including Woonsocket. In 1998, NRIC leased classrooms at Woonsocket High School. One of the NRIC students, a handicapped child, needed medication twice a week during program hours. The principal of Woonsocket High School called on the school nurse, Deborah Rodericks (Rodericks), to dispense the medication. The impact on Rodericks's workload was *de minimis*, amounting to no more than five minutes, during which time the student went to her office, the medication was dispensed, and Rodericks recorded the event.

Nevertheless, Rodericks, with the representation of the Woonsocket Teachers' Guild, Local 951, AFT (hereinafter collectively referred to as plaintiffs), filed a grievance arguing that: (1) any increase in Rodericks's workload not then covered by the collective bargaining agreement (CBA) must be negotiated, including the administration of medication to an NRIC student; and (2) the CBA does not permit a school nurse to provide non-emergency health services to NRIC students because the NRIC is not a party to the CBA. The plaintiffs then sought to have the dispute arbitrated pursuant to the CBA.

In August 1999, the arbitrator issued her decision and award in plaintiffs' favor. She dismissed plaintiffs' workload argument as insignificant in light of past arbitration precedent that found increases in workload (even those substantially greater than the five-minute increase here) did not automatically trigger negotiation under the CBA. However, the arbitrator agreed with plaintiffs that an administrator could not order Rodericks to dispense medication to an NRIC student because he was not a member of the regular student body. The arbitrator opined that it would set bad precedent if Rodericks was ordered to serve students not within the exclusive

direction and control of defendant—namely, that other employees could be required to either provide services to students from communities other than Woonsocket or work outside of their bargaining unit.

Thereafter, plaintiffs filed a petition in the Superior Court, seeking confirmation of the arbitrator's award, pursuant to G.L. 1956 § 28–9–17. The defendant filed a motion for a stay and to vacate the award. The stay was granted. Both parties submitted memoranda and the matter was heard by the Superior Court on November 9, 1999. Upon review, the trial justice, reluctantly and with a "heavy heart," confirmed the arbitrator's award. The trial justice held that statutory constraints on his review required him to confirm the award. At a subsequent hearing, he awarded attorneys' fees to plaintiffs pursuant to § 28–9–18(c). The defendant moved for a stay to pursue the instant appeal. The trial justice granted the defendant's stay.

I

## Standard of Review

The judicial authority of the Superior Court to review or vacate an arbitration award in labor disputes is limited pursuant to § 28–9–18. Appellate review by this Court is provided by § 28–9–25 as follows:

"[a]n appeal may be taken from an order made in a proceeding under this chapter, or from a judgment entered upon an award. The proceedings upon an appeal, including the judgment and the enforcement of the judgment, are governed by the provisions of statute and rule regulating appeal in actions as far as they are applicable."

The Superior Court typically refrains from reviewing the merits of a previously arbitrated labor dispute. *See State v. Rhode Island Alliance of Social Ser-*

*vices Employees, Local 580,* 747 A.2d 465, 468 (R.I.2000). However, a trial justice must vacate an award:

"(1) When the award was procured by fraud.

"(2) Where the arbitrator or arbitrators exceeded their powers, or so imperfectly executed them, that a mutual, final, and definite award upon the subject matter submitted was not made.

"(3) If there was no valid submission or contract, and the objection has been raised under the conditions set forth in § 28–9–13." Section 28–9–18(a).

An arbitrator exceeds his or her powers under § 28–9–18(a)(2) by resolving a non-arbitrable dispute or if the award fails to " 'draw its essence' from the agreement, if it was not based upon a 'passibly plausible' interpretation thereof, if it manifestly disregarded a contractual provision, or if it reached an irrational result." *State Department of Children, Youth and Families v. Rhode Island Council 94,* 713 A.2d 1250, 1253 (R.I.1998). When reviewing the question of arbitrability, we examine the arguments of the parties *de novo.* *See Rhode Island Alliance of Social Services Employees,* 747 A.2d at 468 (citing *Rhode Island Council 94 v. State,* 714 A.2d 584, 588 n. 2 (R.I.1998)). Further, like subject matter jurisdiction, the question of arbitrability may be raised by the parties at any time, or by this Court *sua sponte.* *See Providence Teachers Union v. Providence School Board,* 725 A.2d 282, 283 (R.I.1999) (citing *Rhode Island Brotherhood of Correctional Officers v. State Department of Corrections,* 707 A.2d 1229, 1235 (R.I. 1998)).

## II

### Arbitrability

The defendant's appeal from the Superior Court's denial of its motion to vacate the arbitration award is brought on two grounds. The first concerns the question of arbitrability. The defendant argues that it possesses a non-delegable managerial duty to provide health services to NRIC students, which leaves the arbitrator powerless to address the issue because her decision may, and in this case does, contravene state law. We agree.

The defendant has a general duty of responsibility to operate and manage the schools within its district and to "provide for and assure the implementation of federal and state laws, the regulations of the board of regents for elementary and secondary education, and of local school policies, programs, and directives." G.L.1956 § 16–2–9(a)(3). All schools within any district must have a school health program pursuant to G.L.1956 § 16–21–7. School health programs must "provide for the organized direction and supervision of a healthful school environment, health education, and services." *Id.* The defendant also has a duty to provide special education programs. *See* G.L.1956 § 16–24–1. The NRIC is a special education program, for which defendant is jointly responsible, authorized by G.L.1956 § 16–3.1–8, which provides in pertinent part that:

"the school committees of the cities and towns of Lincoln, Cumberland, Pawtucket, Central Falls, *Woonsocket,* Smithfield, North Smithfield, North Providence, Johnston, Foster, Glocester, Foster–Glocester regional school district, and Burrillville are hereby authorized and empowered to continue and/or initiate cooperative efforts to provide special education programs and diagnostic services required by law or regulation, to utilize technology, including without limitation television, to provide limited interest curriculum, and to provide programs for the gifted and talented, all on a collaborative basis. The various school committees may assign

and delegate to their respective superintendents of schools, acting as a regional board of superintendents, such duties, responsibilities, and powers as the committees may deem necessary for the conduct, administration, and management of the regional center collaborative of northern Rhode Island." (Emphasis added.)

The duty to provide health services to NRIC students is found within a special set of regulations. *See* § 16–2–9(a)(3); *Regulations of the Board· of Regents for Elementary and Secondary Education Governing the Education of Children with Disabilities* §§ 300.1, 300.2(b)(1)(i) (Regulations). Pursuant to the Regulations, special education children must be provided with "related services," which include school health services "provided by a qualified school nurse or other qualified person and in conformance with the school health regulations * * *." Regulations § 300.24(12).

Because this duty is created by state law, it is non-delegable and cannot be bargained away in the CBA. *See Rhode Island Alliance of Social Services Employees,* 747 A.2d at 469. For example, in *Pawtucket School Committee v. Pawtucket Teachers' Alliance,* 652 A.2d 970, 972 (R.I.1995), we confronted a statute that established a program for students with special needs, particularly, for the "Education of Limited English Proficient Students [ESL]." According to the statute, the school committee was required to ensure that necessary ESL services were provided to students. *See id.* (citing G.L.1956 § 16–54–2). The Director of ESL in Pawtucket required all ESL teachers to submit copies of their lesson plans for review, once a month. *See id.* at 971. An ESL teacher filed a grievance and sought arbitration. *See id.* The trial justice found the matter non-arbitrable and we affirmed. *See id.* at 972. In doing so, we recognized "that in every city or town individuals within the school administration such as the associate director in Pawtucket, act for the school committee * * *. In this way the school committees succeed in maintaining the necessary management of the schools and the various programs mandated by state and federal law." *Id.* We held that "the school committee can negotiate many items with the professional and nonprofessional employees of the system, [but] it cannot bargain away statutory powers and responsibilities." *See id.* (citing *Vose v. Rhode Island Brotherhood of Correctional Officers,* 587 A.2d 913, 915 (R.I.1991), and *Rhode Island Court Reporters Alliance v. State,* 591 A.2d 376, 378 (R.I.1991)).

In this case we face a similar situation. Here, defendant has determined, via the principal,[1] that the high school nurse should administer medication to an NRIC student as part of its duty to provide school health services. The statutes and regulations specify that NRIC students are within the public school system and are entitled to school health services. *See* § 16–3.1–3; Regulations § 300.24(12). Therefore, by making this request, defendant is acting pursuant to a statutory duty. The decision of the arbitrator is in direct conflict with this statutory duty because it attempts to prevent defendant from making this managerial decision. The award must be vacated because, in terms of priority, "applicable state * * * law trumps contrary contract provisions, contrary practices of the parties, and contrary arbitration awards." *Rhode Island Alliance of Social Services Employees,* 747 A.2d at

---

1. The school committee has the authority to delegate its duties to the superintendent, and the superintendent has the same authority with respect to the principal. *See* G.L.1956 §§ 16–2–9(a)(23), 16–2–11.

469. Therefore, arbitration awards that act to modify the scope of the school committee's statutory duty are unenforceable because the arbitrator has *no* authority to make them. *See id.; Rhode Island Council 94*, 714 A.2d at 591–92 (requirements of state law cannot be submitted to arbitration); *Rhode Island Brotherhood of Correctional Officers*, 707 A.2d at 1234 (same); *State Department of Mental Health, Retardation, and Hospitals v. Rhode Island Council 94*, 692 A.2d 318, 324 (R.I.1997) (same); *Pawtucket School Committee*, 652 A.2d at 972 (same).

## III

### The Arbitrator's Award

 Even if the dispute was arbitrable, we would still be forced to vacate the award of the arbitrator pursuant to § 28–9–18(a)(2). As previously discussed, the authority to review the award of an arbitrator is limited. *See* § 28–9–18. However, the authority of an arbitrator is not "unbridled." *Rhode Island Council 94*, 714 A.2d at 588. An arbitrator has a duty to resolve a dispute based on the relevant provisions in the CBA. *See id.* Therefore, if an award fails to " 'draw its essence' from the agreement, if it was not based upon a 'passibly plausible' interpretation thereof, if it manifestly disregarded a contractual provision, or if it reached an irrational result," we consider it an abuse of an arbitrator's power pursuant to § 28–9–18(a)(2). *See State Department of Children, Youth and Families*, 713 A.2d at 1253.

Here, the arbitrator decided that defendant could not force Rodericks to dispense medication because the CBA did not permit her to serve pupils who "[were] not under the exclusive direction and control of the Woonsocket Education Department * * *." However, there is no provision within the CBA that limits the duties of teachers solely to those students who are "within the exclusive direction and control of the Woonsocket Education Department." Therefore, the arbitrator's award was not "passably plausible" because it was wholly inconsistent with the plain language of the CBA; the arbitrator based her decision on a limitation contained *nowhere* within the CBA. *See State Department of Children, Youth and Families*, 713 A.2d at 1253. Furthermore, her decision "produces an irrational result." *Id.* If her decision were allowed to stand, defendant would be prohibited from providing any education services to students who may be both Woonsocket public school students and participants in public school collaborative programs. Her decision would prohibit defendant from exercising *any* statutory duties with regard to NRIC students, despite the fact that they are public school students learning within one of its schools, and in direct contravention of the CBA. The CBA sets forth the common goal of defendant and plaintiffs to provide education and related services to all public school students: the preamble to the CBA expressly recites that their common goal is to provide public education to "all children." Clearly, the phrase "all children" encompasses public school students, including those such as the NRIC students who attend special education programs in Woonsocket's public schools. Thus, to prohibit Rodericks from dispensing medication to NRIC students simply because they are not members of the Woonsocket High School student body, would be wholly "irrational" and would "manifestly disregard[ ] a contractual provision," namely, the CBA's own preamble. *See State Department of Children, Youth and Families*, 713 A.2d at 1253. In reaching this conclusion, we reject plaintiffs' argument that requiring Rodericks to administer medication to an NRIC student would be

the same as requiring her to administer medication to any student, anywhere in the state. This is not "anywhere." Rather, it is within the very school where she currently engages in identical duties each day, at the request of *her* employer, and it is for the benefit of a public school special education student who must be afforded, both under state law and the CBA, the benefit of health services.

## Conclusion

Because the dispute in this case was not arbitrable from its inception, we find that the arbitrator exceeded her powers. The provision of health services to special education NRIC students who attend classes in Woonsocket High School is within the defendant's non-delegable managerial decision-making authority, which cannot be circumvented by negotiation. Moreover, even if the original issue had been arbitrable, we still would be obligated to vacate this award because it was not a possibly plausible interpretation of the CBA, it would produce an irrational result, and it manifestly disregards a relevant contractual provision.

For the reasons stated, the defendant's appeal is sustained, the judgment of the Superior Court is vacated, and the case is remanded to the Superior Court for further proceedings consistent with this opinion, including reconsideration of the award of attorneys' fees.