**CITY OF NEWPORT**

v.

**Allen LAMA et al.**

**No. 2001–1–Appeal.**

Supreme Court of Rhode Island.

May 21, 2002.

Christopher J. Behan, for plaintiff.

Gerard P. Cobleigh, Warwick, for defendant.

Present WILLIAMS, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

The plaintiff, City of Newport (the city), appeals a Superior Court judgment confirming an arbitration award in favor of the defendants, Allen Lama and his union, Rhode Island Council 94, AFSCME, AFL–CIO, Local 911 (collectively referred to as the union). This case came before the Court for oral argument on April 10, 2002, pursuant to an order that directed both parties to appear to show cause why the issues raised by this appeal should not summarily be decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown and that the issues raised by this appeal should be decided at this time. The facts pertinent to this appeal are as follows.

### I

### Facts and Travel

In 1995, the collective bargaining agreement (CBA) that existed between the city and the union provided that "leave and medical expenses for injury in the line of duty shall be granted as provided for in Title Three of the City Code Ordinances." At that time, the applicable ordinance, found in § 3.28.150 of the Newport Code

of Ordinances, entitled "[l]eave for injury or illness in line of duty," provided that permanent employees receive full pay if they are prevented from working because of an occupational injury. In 1996, the city amended the ordinance to incorporate the rate of pay proscribed by the Rhode Island Workers' Compensation Act, G.L.1956 chapters 29 through 38 of title 28, effectively reducing the rate of pay that injured city workers received. A controversy ensued about whether the amended version of the ordinance applied to city workers, and the matter was submitted to arbitration in November 1998.

In February 1999, the arbitrator decided that the city violated the CBA when it amended the ordinance and altered its injured workers' rate of pay. The arbitrator determined that the existence of two potential versions of the ordinance made the occupational injury provision ambiguous, and therefore, she looked to the intent of the parties. The arbitrator found that full pay for injured workers had been the "past practice" of the parties since at least 1984, and that the city had attempted to change the policy unilaterally and without negotiation. Furthermore, the arbitrator credited a union witness, who testified that the city "never informed the union of its intent to alter the contractual wages" of certain city workers. She declined to credit the affidavit of a city witness who alleged that he had given the union notice of the amendment. Because he did not appear as a live witness, he was unable to be cross-examined about his statements. In sum, the arbitrator concluded that, absent negotiation, the city was not entitled to incorporate the amended ordinance.

In February and March 1999, the city filed both a motion to stay the arbitration award and a petition to vacate the arbitration award, arguing that the arbitrator exceeded her powers, manifestly disre-

garded the clear and unambiguous language of the CBA, and failed to draw her award from the essence of the contract. The union objected and filed a petition to confirm the award. A hearing was held in January 2000. The hearing justice issued a written decision in favor of the union, confirming the arbitrator's award. The city timely appealed.

## II

### Arbitration Award

■ "The . Superior Court typically refrains from reviewing the merits of a previously arbitrated labor dispute." *Woonsocket Teachers' Guild, Local 951, AFT v. Woonsocket School Committee*, 770 A.2d 834, 836–37 (R.I.2001) (citing *State v. Rhode Island Alliance of Social Services Employees, Local 580*, 747 A.2d 465, 468 (R.I.2000)). However, pursuant to G.L. 1956 § 28–9–18(a), the court must vacate an arbitration award if:

"(2) * * * the arbitrator or arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

"An arbitrator exceeds his or her powers under § 28–9–18(a)(2) by resolving a nonarbitrable dispute or if the award fails to" ' "draw its essence" from the agreement, if it was not based upon a "possibly plausible" "interpretation thereof, if it manifestly disregarded a contractual provision, or if it reached an irrational result." ' *Woonsocket*, 770 A.2d at 837 (quoting *State Department of Children, Youth and Families v. Rhode Island Council 94*, 713 A.2d 1250, 1253 (R.I.1998)).

The hearing justice found that the CBA clearly provided for full pay for injured workers because "[w]here the pay rate is to be something other than the workers['] regular rate, the agreement explicitly

states the difference." Furthermore, she found that because the union had initially negotiated the terms of the occupational injury provision, the city could not apply the amended ordinance to the CBA absent further negotiation.

We disagree with both the arbitrator and the trial justice, because the arbitrator manifestly disregarded the clear and unambiguous language of the contract.

The city argues that the arbitrator erred because the occupational injury provision was unambiguous. The city asserts that upon the passage of the 1996 amendment to the ordinance, it immediately became part of the CBA because the occupational injury provision contains no express limitation on the city's power to amend the ordinance. The city contends that if the parties intended for a particular rate of pay to govern, they would have employed the term "full pay" instead of including a generic reference to the ordinance. Lastly, the city argues that the arbitrator erred by relying on the past practice of the parties because there was no past practice provision in the CBA.

 In this case, the arbitrator incorrectly found that the reference to the ordinance in the CBA was capable of two different meanings because the union presented the 1995 version of the proper rate of pay and the city presented the 1996 version. The absence of a limitation on the city's authority to amend the ordinance implies that the parties accepted such a possibility. The arbitrator's award may not be sustained where "the arbitrator based her decision on a limitation contained *nowhere* within the CBA." *Woonsocket,* 770 A.2d at 839.

By comparison, in Article 13 of the CBA, the parties also refer to the ordinance. However, in this instance, the CBA expressly provides that "[i]t is agreed that any changes and/or amendments to the Sick Leave provisions of Title Three (3) of the City Code of Ordinances, as contained in this agreement, shall only be made after negotiations with the Union." Thus, it is clear that the parties knew how to preserve the applicability of the 1995 "full pay" ordinance, by making any change subject to negotiation, but failed to include the appropriate language.

 Furthermore, the arbitrator should not have relied on past practice because where there is a conflict between the past practice of the parties and the contract language, the contract language governs. *See Town of North Providence v. Local 2334, International Association of Fire Fighters, AFL–CIO,* 763 A.2d 604, 606 (R.I.2000) (citing Ira F. Jaffe, *Past Practice, Maintenance of Benefits, and Zipper Clauses,* 1 Labor and Employment Arbitration, § 10.03[3] at 10–24 (Tim Bornstein et al. eds.1998)).

Thus, the arbitrator's award should not have been confirmed because she manifestly disregarded the clear and unambiguous language of the contract. *See Woonsocket,* 770 A.2d at 839 (citing *State Department of Children, Youth & Families,* 713 A.2d at 1253).

Lastly, the union argues that the city could not have amended the ordinance because it was bound to the terms of the 1995 CBA as a matter of law. However, the union mistakenly overlooks the city's legislative function and its inherent power to amend its ordinances. *See McCarthy v. Johnson,* 574 A.2d 1229, 1230–31 (R.I.1990) (citing *Bruckshaw v. Paolino,* 557 A.2d 1221, 1223 (R.I.1989)). Because the city did not agree otherwise, it was clearly entitled to adopt the Workers' Compensation rate. The city could have amended the ordinance because providing full pay to its injured workers carried no incentive for

those workers to return to their employment.

### Conclusion

Accordingly, the city's appeal is sustained. The judgment of the Superior Court is reversed. The papers of the case are remanded to the Superior Court for entry of judgment for the city.