DECISION
Before the Court are the petitions of the State of Rhode Island
Department of Corrections (State/Petitioner) and the Rhode Island Brotherhood of Correctional Officers (Union/Respondent). Petitioner moves to vacate the arbitrator's awards. Respondent moves to confirm the same. Jurisdiction is pursuant to G.L. 1956 § 28-9-18.
 FACTS AND TRAVEL
On April 14, 1993, the Director of the Department of Corrections (DOC) terminated the employment of Anthony Algasso (Grievant) as a correctional officer/kitchen steward at the DOC, effective April 25, 1993. The discharge arose from the seizure of certain items obtained by police during a search pursuant to a warrant of Grievant's apartment on February 26, 1993. While conducting the search, investigators discovered substances that allegedly were marijuana and cocaine, drug paraphernalia, food items and kitchen supplies allegedly stolen from the DOC, linens allegedly stolen from the Department of Mental Health, Retardation and Hospitals (MHRH), and illegal cable boxes.
The State filed criminal charges against Grievant stemming from the 1993 search. See State v. Algasso, P2-93-1231A. Before trial in that matter, at a suppression hearing on February 11, 1997, the court found that the police had acted recklessly in effecting the raid and that a lead investigator had given a false affidavit to obtain the warrant. Accordingly, the court suppressed the introduction at trial of all the evidence seized by police during the 1993 search. As a result, the criminal charges against Grievant were dismissed.
Some time between March 8, 1995 and April 8, 1995 while he was terminated from the DOC, Grievant engaged in criminal activity unrelated to the 1993 charges. That criminal activity against Grievant was charged in P1/96-2465B. On March 12, 1997, Grievant pleaded nolo contendere in P1-96-2465B to aiding and abetting another to commit a burglary.
On behalf of Grievant, the Union submitted the matter of Grievant's 1993 termination to arbitration in 2000, calling upon the arbitrator to determine whether the Director had just cause to discharge Grievant. On October 1, 2001, addressing only the issues on the merits, the arbitrator ruled that no just cause existed for termination. In his January 8, 2002 remedy award, the arbitrator ordered the reinstatement of Grievant effective April 25, 1993 to March 12, 1997, with full back pay, benefits and statutory interest.
Subsequently, on March 5, 2002, the DOC held a pre-disciplinary hearing, addressing the effect on Grievant's employment based upon the 1997 nolo plea to the aiding and abetting a burglary charge. Because of the plea, on March 8, 2002, the Director notified Grievant of his (second) termination, effective April 8, 1995, the alleged date of the criminal conduct. The Union filed a grievance on behalf of Grievant with respect to the March 2002 termination. On April 3, 2002, Grievant tendered his resignation effective March 11, 1997, the day before hisnolo plea. The Union has taken no further action with respect to the March 2002 second termination.
 THE ARBITRATOR'S AWARDS
a. Award on the Merits, October 1, 2001
In a forty-three page decision, the arbitrator found no just cause for Grievant's 1993 termination. October 1, 2001 Award of Arbitrator at 43. As a preliminary matter, the arbitrator discussed that although he admitted into evidence the items suppressed by the court in the 1997 relating to the 1993 criminal case, the court would not automatically afford that evidence a presumption of truth and reliability. Id. at 38-39; see State v. Algasso, Ca. No. P2-93-1231A. Instead, the arbitrator asserted:
 "it would be reckless and unreasonable of me to assume that any and all statements contained in reports by [police investigators] are true. . . . Judge Dimitri's scathing indictment of the investigation . . . require[s] that I look with enhanced scrutiny at any statement contained in any report filed by those investigators before I accept said statement as factual." Id. at 38-39 (emphasis in original).
Having expressed that position, with respect to the allegations of theft of the food items and kitchen supplies, the arbitrator found that the evidence did not substantiate the investigator's assertion of wide-scale missing inventory, which would indicate theft. Id. at 39. Additionally, pursuant to a stipulation between the parties, the arbitrator concluded that all but one of the food/kitchen items seized was available for purchase by the public, and therefore, Grievant could have acquired the items by buying them.[1] Id. The arbitrator also found credible testimony confirming the existence of Grievant's catering business, and concluded that the catering business could legitimately explain the presence of the food items and kitchen supplies in Grievant's apartment. October 1, 2001 Award of Arbitrator at 39. Accordingly, the arbitrator ruled that "the State has failed to prove that 1) any of the foodstuffs, utensils, or other kitchen-related materials seized in February 1993 were the property of the DOC, 2) Mr. Algasso was guilty of theft with respect to those items, or 3) quantities of such items were actually missing from the ACI." Id. at 40.
In analyzing the allegation of theft of MHRH linens, the arbitrator found that "the method of obtaining, using, and disposing of the MHRH towels and blankets was such as to encourage viewing them as essentially disposable items of little or no value." Id. at 41. Accordingly, the arbitrator reasoned, "[t]he evidence supports a conclusion that Mr. Algasso and others had a reasonable basis to view those towels, and even those blankets, as disposable items." Id. Because the evidence did not demonstrate that the DOC "ever instructed any of its Central Kitchen employees to treat those towels and blankets . . . in any manner other than as disposable items to be used and discarded," Grievant's retaining of the linens "does not make him a thief." Id. As such, Grievant's admitted possession of the linens "[fell] far short of [the] `theft' " alleged by the State. October 1, 2001 Award of Arbitrator at 41.
Turning to the allegations of drug possession, the arbitrator gave "full deference" to the court's assessment of the investigators' credibility during the suppression hearing. Id. The arbitrator noted that "[t]here is no evidence before me which would indicate that any laboratory ever established that any materials seized at Mr. Algasso's home in February 1993 were illegal substances." Id. Given the investigators' failure to confirm the nature of the substances as illegal drugs through testing and their damaged credibility pursuant to the 1997 suppression hearing, the arbitrator found that the State failed to prove that Grievant possessed illegal substances in his home on the date of the search. Id.
Finally, with respect to Grievant's illegal cable set-up, the State did not convince the arbitrator that this misdemeanor offense would qualify Grievant for just termination. Id. at 41-42. Because the testimony of the Director demonstrated that he typically would allow employees convicted of off-duty misdemeanor crimes to remain on the job where the offenses did not have a "direct nexus to their employment," no just cause existed to discharge Grievant because of the illegal cable boxes. October 1, 2001Award of Arbitrator at 42.
In light of his analysis of these issues, the arbitrator concluded that "there was not just cause for termination of [Grievant] on April 25, 1993." Id. at 42, 43. Pursuant to an agreement between the parties, the arbitrator addressed the issue of remedies separately, and released his opinion on that matter on January 8, 2002. Id.
b. Remedy Award, January 8, 2002
The arbitrator awarded Grievant full back pay and benefits, plus statutory interest, effective April 25, 1993 (date of initial termination) to March 12, 1997 (date of nolo plea to burglary charge).January 8, 2002 Award of Arbitrator-Remedy at 12. In explaining his use of the March 1997 date, the arbitrator asserted that "the 1994 Code of Ethics and Conduct . . . makes the `. . .plea of nolo contendere to a criminal charge' one of the `. . .instances of misconduct which may subject an employee to disciplinary measures up to and including termination.' The Code does not speak of the date underlying the criminal charges but rather specifically mentions the `plea.' " Id.
When considering whether Grievant's 1997 nolo plea would preclude a remedy award stemming from the 1993 wrongful termination, the arbitrator noted, "a decision to terminate must rise or fall depending upon the information known at the time of discharge." Id. at 8. The arbitrator thus rejected the State's request "to treat that 1997 plea as a bar to reinstatement and as an obstacle to full application of the terms [of the CBA]." See id. at 9.
At the same time, however, the arbitrator declined to "preempt the Director's `. . .disciplinary function' regarding the 1995-1997 events" that could affect Grievant's post-1997 employment. January 8, 2002 Awardof Arbitrator-Remedy at 12. Relying on the Riel case, the arbitrator refused to impose his own view of an appropriate sanction against Grievant for the 1997 plea retroactive from the date of the plea onward, but instead elected to defer to the Director's judgment in the event that the Director chose to discipline Grievant because of the plea. Id. The arbitrator left open the possibility for the DOC to take action against Grievant in response to his March 12, 1997 plea, retroactive to that date, and proposed that the parties resolve any resulting dispute of such action through other arbitration proceedings.[2] Id. at 12-13.
 STANDARD OF REVIEW
As a general rule, courts possess limited power to vacate arbitration awards. See Town of N. Providence v. Local 2334 Int'l Ass'n of FireFighters, AFL-CIO, 763 A.2d 604, 605 (R.I. 2000); Town of Coventry v.Turco, 574 A.2d 143, 146 (R.I. 1990); Jancito v. Egan, 120 R.I. 907, 911-12, 391 A.2d 1173, 1175-76 (R.I. 1978). As provided in § 28-9-18
of the Rhode Island General Laws, the Court may vacate an arbitrator's award in only three instances:
 "(1) When the award was procured by fraud.
 (2) Where the arbitrator or arbitrators exceeded their powers or so imperfectly executed them, that a mutual, final, and definite award upon the subject matter submitted was not made.
 (3) If there was no valid submission or contract, and the objection has been raised under the conditions set forth in § 28-9-13." R.I. Gen. Laws § 28-9-18."
In effecting this mandate, the Rhode Island Supreme Court has held that "[a]s long as the award `draws its essence' from the contract and is based upon a `passably plausible' interpretation of the contract, it is within the arbitrator's authority and [the Court's] review must end."Jancito, 120 R.I. at 912, 391 A.2d at 1176 (citing United Steelworkers ofAmerica v. Enterprise Wheel Car Corp., 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424, 1428 (1960)). Thus, "[a]bsent a manifest disregard of a contractual provision or a completely irrational result, the award will be upheld." Turco, 574 A.2d at 146; see Town of N.Providence, 763 A.2d at 606; Rhode Island Council 94, AFSCME, AFL-CIO v.State, 714 A.2d 584, 587 (R.I. 1998). Additionally, because the Legislature restricted the Superior Court's power to vacate arbitration awards to the three grounds enumerated in § 28-9-18, and "a mistake of law is not one of those grounds[,] . . . such an omission is clear evidence that an award cannot be challenged" on the premise of a mistake of law. Belanger v. Matteson, 115 R.I. 332, 356, 346 A.2d 124, 138 (R.I. 1975).
Judicial deference to the arbitrator's decision reflects the philosophy that "broad judicial review in this area undermines the strong governmental policy encouraging the private settlement of labor grievances through the relatively inexpensive and expedient means of arbitration." Rhode Island Council 94, 714 A.2d at 588. Thus, the Rhode Island Supreme Court has noted that "it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept . . . [and as such] Courts . . . do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts." Id. (quoting United Paperworkers Int'lUnion, AFL-CIO v. Misco, Inc., 484 U.S. 29, 37-38, 108 S.Ct. 364, 370-71, 98 L.Ed.2d 286, 299 (1987)); see also City of Newport v. Lama,797 A.2d 470, 472 (R.I. 2002) (noting that "[t]he Superior Court typically refrains from reviewing the merits of a previously arbitrated labor dispute") (quoting Woonsocket Teachers' Guild, Local 951, AFT v.Woonsocket Sch. Comm., 770 A.2d 834, 836-37 (R.I. 2001)). Accordingly, a court "may not reconsider the merits of an award despite allegations that it rests upon errors of fact or on a misinterpretation of the contract."Rhode Island Council 94, 714 A.2d at 588.
ARBITRATOR'S AWARD ON THE MERITS, OCTOBER 1, 2001
a. Arbitrator's Findings with Respect to Food Items/Kitchen Utensils
Petitioner contends that the arbitrator's finding that the State failed to prove ownership, and Grievant's theft of the food items/kitchen utensils, was irrational and exceeded his authority. Additionally, Petitioner asserts that the arbitrator neglected his duty to independently assess the credibility and reliability of the State's evidence and wrongfully relied solely on the court's evaluations of witnesses and police reports during the 1997 suppression hearing. Alternatively, Respondent submits that the arbitrator's decision on this issue was well-founded after a thorough review of all the evidence before him. Further, Respondent contends, the arbitrator justifiably relied on the court's assessments because the State failed to call as live witnesses in the arbitration proceedings any investigators involved in the 1993 search.
The arbitrator carefully evaluated the evidence and testimony presented to him and made a well-reasoned decision with respect to the alleged theft of the food items and kitchen supplies. See October 1, 2001 Awardof Arbitrator at 8-15, 19-22, 39-40 (reviewing testimony and evidence, and analyzing and rejecting this allegation against Grievant). Because the State elected not to call any of the investigators involved in the search, the arbitrator justifiably relied on the assessments of the court during the 1997 suppression hearing in aiding his determination that the State failed to demonstrate that Grievant had stolen these items. Seeid. at 10, 17 (asserting that "no person actually involved in the search of Mr. Algasso's property testified before me" and reiterating that "no individual who participated in, nor was present during the search of Mr. Algasso's home on February 26, 1993, testified at these arbitration proceedings"). Additionally, the arbitrator did not totally disregard the statements made by the investigators and criticized by the court, but instead "look[ed] with enhanced scrutiny at any statement contained in any report filed by those investigators before [he] accept[ed] said statement as factual." Id. at 39. As such, the arbitrator did not blindly adopt the findings of the court, and, accordingly, the arbitrator was not irrational or in excess of his authority in finding that the State failed to prove theft of the food items/kitchen utensils.
b. Arbitrator's Findings with Respect to Linens
Petitioner also claims that the arbitrator's finding that the State failed to prove that Grievant stole linens from the MHRH was irrational. Respondent counters that the arbitrator properly concluded that the DOC considered these items disposable, and therefore, Grievant's possession of the linens did not rise to the level of "theft."
As with his evaluation of the claim of food items/kitchen supplies theft, the arbitrator methodically considered the record, testimony and evidence before him. Id. at 2-8, 14, 40-41 (examining and analyzing evidence with respect to allegedly stolen linens). Contrary to Petitioner's contention, the arbitrator did not rely heavily on the monetary value of the linens in rendering his decision. See October 1,2001 Award of Arbitrator at 41. Rather, the arbitrator arrived at his conclusion that the DOC treated the linens "as essentially disposable items" based on "the circumstances of how these towels were obtained and viewed by Department personnel." Id. Therefore, the arbitrator's decision with respect to the linens was not irrational.
c. Arbitrator's Findings with Respect to "Drugs"
The arbitrator also was irrational, Petitioner urges, in finding that the State did not prove that the substances seized from Grievant's apartment were illegal drugs. Respondent asserts that because the investigators neglected to test the substances, which could have revealed the nature of the substances, the arbitrator correctly concluded that the State failed to show that Grievant possessed cocaine and marijuana.
After a review of the evidence, including the lack of any laboratory test pointing to illegal drugs, and upon consideration of the court's scathing criticism of the fraudulent investigatory methods employed by the authorities, the arbitrator rationally concluded that the State did not prove that it seized illegal drugs from Grievant's apartment during the 1993 search. Id. at 16-18, 22-27, 41 (reviewing and analyzing evidence presented involving the allegedly illegal drugs). Accordingly, the arbitrator was not irrational in finding that the State failed to prove the existence of illegal drugs in Grievant's apartment.
d. Arbitrator's Findings with Respect to Illegal Cable Boxes
Petitioner argues that the arbitrator was irrational and improperly substituted his judgment for that of the Director in finding that Grievant's possession of illegal cable boxes did not constitute just cause for termination. Disputing this claim, Respondent asserts that the arbitrator reached this rational conclusion based on the evidence and testimony of DOC officials.
Again, after consideration of the evidence and testimony of the DOC Director, the arbitrator reasonably concluded that the off-duty misdemeanor offense of possessing illegal cable boxes, which bears no "direct nexus" to the performance of Grievant's job, did not warrant termination. Id. at 41-42. In arriving at this determination, the arbitrator relied upon the Director's testimony that "there are correctional officers who have been convicted of misdemeanor offenses that remain on the job because those offenses have been-have been off duty misconduct which there wasn't a direct nexus to their employment in some of those instances." Id. at 42. As such, the arbitrator's decision with respect to the illegal cable boxes was not irrational, and the arbitrator did not substitute his judgment for that of the Director.
ARBITRATOR'S REMEDY AWARD, JANUARY 8, 2002
a. Post-Discharge Misconduct
Petitioner asserts that the arbitrator was irrational and exceeded his authority in finding that Grievant's misconduct between March and April 1995, which led to Grievant's nolo plea to a felony in P1-96-2465B, did not bar reinstatement. Respondent contends that the arbitrator's decision with respect to Grievant's 1997 nolo plea was rational in light of the evidence and the terms of the CBA.
The CBA between the parties mandates that upon a successful appeal by an employee challenging his termination, the employee must "be restored to his former position and compensated at his regular rate for any time lost during the period of such dismissal." Agreement between the State ofRhode Island and Rhode Island Brotherhood of Correctional Officers
(1991-1994), Art. XVI, § 16.5. In awarding Grievant back pay and benefits from April 25, 1993 to March 12, 1997, the arbitrator followed the letter and the spirit of the CBA, and accordingly, the remedy award was not irrational or in excess of his authority.
b. Equity
Relying on McKennon v. Nashville Banner Publ'g Co., 513 U.S. 352
(1995), Petitioner argues that principles of equity instruct that the arbitrator's remedy award was irrational and that Grievant's back pay should be limited to the period between 1993 and 1995. Respondent urges that the principles enunciated in McKennon do not apply in the context of a CBA, and further, even assuming McKennon's application to the present case, the remedy award does not contravene that holding.
In McKennon, the United States Supreme Court addressed whether evidence of misconduct discovered subsequent to an employee's termination could bar an award of back pay under the Age Discrimination in Employment Act of 1967 where discovery of that evidence nonetheless would have led to lawful termination. McKennon, 513 U.S. 352, 354, 357 (1995). In acknowledging that the after-acquired evidence could affect the employee's remedy under the Act, the Court noted that "[t]he employee's wrongdoing must be taken into account." Id. at 360-61. Additionally, mindful of the position of an employer upon discovery of post-termination misconduct, the Court asserted, "[o]nce an employer learns about employee wrongdoing that would lead to a legitimate discharge, we cannot require the employer to ignore the information." Id. at 362. As such, "[t]he beginning point in the trial court's formulation of a remedy should be calculation of backpay from the date of the unlawful discharge to the date the new information was discovered." Id.
 McKennon's applicability in the context of remedies pursuant to a collective bargaining agreement appears questionable. See Local UnionNo. 307, Nat'l Postal Mailhandlers Union v. United States PostalService, 1997 US. Dist. LEXIS 9622, *10, n. 1 (E.D.Mich. 1997). This is true especially in light of the McKennon Court's heavy reliance on the specific provisions and philosophies underlying the federal statute at issue. See McKennon, 513 U.S. at 357 (observing that "[t]he [Age Discrimination in Employment Act], enacted . . . as part of an ongoing congressional effort to eradicate discrimination in the workplace, reflects the societal condemnation of invidious bias in employment decisions. The ADEA is but part of a wider statutory scheme to protect employees in the workplace nationwide"); Watson v. Riverside OsteopathicHosp., 78 F.Supp.2d 634, 646 (E.D.Mich. 1999) (noting that "McKennon involved a claim of age discrimination, and the Court's ruling rested in no small part on the objective of the federal antidiscrimination statutes to eliminate discrimination in the workplace"). As one court has noted, in a case that "expressly involves a collective bargaining agreement that sets forth the manner in which disciplinary actions are addressed,"McKennon does not apply. Local Union No. 307, Nat'l Postal MailhandlersUnion, 1997 US. Dist. LEXIS 9622 at *10, n. 1.
However, even assuming McKennon's relevance to the back pay remedy under the CBA, Petitioner did not discover Grievant's misconduct until some time after the misconduct, perhaps as late as 1997. See Letter fromDOC Office of Human Resources to Anthony Algasso (February 26, 2002) at 1 (noting that "subsequent to your termination, the Department received information that: On July 23, 1996, . . . an arrest warrant against you [was issued] . . . for aiding and abetting . . . [a] burglary" and that "On March 12, 1997, you entered a plea of Nolo Contendere . . . wherein you admitted to aiding and abetting [a] burglary between March 8, 1995 and April 8, 1995"); January 8, 2002 Award of Arbitrator-Remedy at 12 (observing that Grievant "did not provide the `written notification' required by the Code when he was arrested"). The record does not indicate that Petitioner discovered Grievant's 1995 misconduct prior to Grievant's 1997 plea. As such, the arbitrator's remedy of back pay up to March 1997 was not irrational.
Further, the DOC Code of Ethics and Conduct (Code) expressly indicates that discipline, up to and including termination, is warranted upon a criminal conviction or a plea of nolo contendere, indicating that the actual date of the criminal activity does not dictate when the disciplinary action may occur. See DOC Code of Ethics and Conduct, §§ III (Policy), V (F)(12) (Rules and Regulations: Examples of Misconduct Subject to Disciplinary Action-Criminal Conviction); see also January 8,2002 Award of Arbitrator-Remedy at 12 (finding that the date of nolocontendere plea, not the date of criminal activity leading to the plea, set the time frame when Director could discipline Grievant). Accordingly, the arbitrator's award of back pay from 1993 to 1997 was reasonable and comported with relevant DOC rules.
Additionally, Petitioner contends that Grievant's criminal activity in 1995 caused him to have "unclean hands," and therefore, Grievant is not entitled to pack pay between 1995 and 1997. Although Petitioner correctly notes that the Code requires employees "to uphold and abide by the laws of the United States and the State of Rhode Island," the Code makes clear that the "[f]inding of guilt or plea of nolo contendere to a criminal charge," not the date of the criminal activity itself, governs the time frame for when a Director may take disciplinary action. DOC Code ofEthics and Conduct, §§ III (Policy), V (F)(12); see January 8, 2002Award of Arbitrator-Remedy at 12. As such, the arbitrator's decision to award back pay to include the time period from 1995 to 1997 was not irrational.
c. Statutory Interest and Sovereign Immunity
Finally, Petitioner claims that the arbitrator acted irrationally and exceeded his authority by awarding statutory interest. Additionally, the arbitrator's ruling on this matter failed to "draw its essence" from the CBA, Petitioner asserts, and sovereign immunity bars the interest award. Respondent argues that the arbitrator acted well within his authority and within the bounds of the CBA, established case law and statutory powers.
 Section 9-21-10 of the Rhode Island General Laws provides that:
 "[i]n any civil action in which a verdict is rendered or a decision made for pecuniary damages, there shall be added by the clerk of the court to the amount of damages interest at the rate of twelve percent (12%) per annum thereon from the date the cause of action accrued, which shall be included in the judgment entered therein." R.I.G.L. § 9-21-10(a).
The Rhode Island Supreme Court has held that "arbitrators should add prejudgment interest to their award unless the parties specifically provide otherwise by agreement." Paola v. Commercial Union AssuranceCos., 461 A.2d 935, 937 (R.I. 1983); see Geremia v. Allstate Ins. Co.,798 A.2d 939, 940 (R.I. 2002) (noting that "[t]his Court has long recognized that arbitrators may add prejudgment interest to their awards unless the parties specifically provide otherwise by agreement"); Murinov. Progressive N. Ins. Co., 785 A.2d 557, 559 (R.I. 2001) (affirmingPaola); Fleet Constr. Co. v. Town of N. Smithfield, 713 A.2d 1241, 1245 (R.I. 1998) (noting "it is well settled that arbitration awards may include prejudgment interest"). Additionally, the Court has noted that "the imposition of interest in arbitration matters should be addressed to the arbitrators, and `we shall accord the finding made in this area by an arbitrator or arbitrators the same deference that we have given to them in the past.'" Murino, 785 A.2d at 559 (quoting Mangiacapra v. SentryInsurance Co., 517 A.2d 1041, 1042 (R.I. 1986)).
At the same time, however, the Court has precluded prejudgment interest awards against the State or a town pursuant to the shield of sovereign immunity. See Donnelly v. Town of Lincoln, 730 A.2d 5, 10 (R.I. 1999);Reagan Constr. Corp. v. Mayer, 712 A.2d 372, 373 (R.I. 1998) (noting that sovereign immunity shields the State from payment of interest when there is no "waiver of immunity by express statutory language or by necessary implication therefrom"). As the Donnelly Court stated, "the `doctrine of sovereign immunity insulates the state from the payment of interest in the absence of a waiver of immunity by express statutory language or by necessary implication therefrom.' " Donnelly, 730 A.2d at 10 (quotingReagan Constr. Corp. v. Mayer, 712 A.2d 372, 373 (R.I. 1998)). Accordingly, where the State does not waive the protection afforded by sovereign immunity expressly or by necessary implication, liability for prejudgment interest does not attach. See id.
In the present case, no provision in the CBA between Petitioner and Respondent permits an award of interest by an arbitrator; the CBA is silent on whether the State may be subject to liability for prejudgment interest. See Agreement lbetween the State of Rhode Island and RhodeIsland Brotherhood of Correctional Officers (1991-1994), Art. XVIII, §§ 18.1-18.6. As the State has not waived its sovereign immunity either expressly or by necessary implication, liability for prejudgment interest does not attach. Accordingly, the arbitrator exceeded his authority in awarding said interest.
 CONCLUSION
Given the Court's limited power to vacate arbitration awards, see RhodeIsland Council 94 v. State, 714 A.2d 584, 587 (R.I. 1998) (holding that "judicial authority to review or to vacate an arbitration award is limited"), and the reasonableness of the arbitrator's findings based on the evidence, the Court denies Petitioner's motion to vacate the arbitrator's awards as to back pay and benefits and grants Respondent's motion to confirm same. With respect to the arbitrator's award of prejudgment interest, the Court grants Petitioner's motion to vacate the prejudgment interest award and denies Respondent's motion to confirm same.
Counsel shall present the appropriate order for entry.
[1] Based on the testimony of DOC officials, the arbitrator found that that one item, a jar of peanut butter labeled "USDA," was "of a different size than those utilized in the Central Kitchen in 1993" and, instead, could have belonged to an individual who received public assistance, such as Grievant's then-girlfriend. October 1, 2001 Award of Arbitrator
at 40.
[2] The Director did act in March 2002, and after a pre-disciplinary hearing addressing Grievant's 1997 nolo plea, he terminated Grievant's employment, effective April 8, 1995.