**Supreme Court**

No. 2013-142-Appeal.
(PM 10-6823)

State of Rhode Island       :
Department of Corrections

v.               :

Rhode Island Brotherhood of   :
   Correctional Officers.

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Supreme Court

No. 2013-142-Appeal.
(PM 10-6823)
(Dissent and Concurrence begins on Page 16)

State of Rhode Island      :
Department of Corrections

          v.          :

Rhode Island Brotherhood of     :
Correctional Officers.

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.


**O P I N I O N**

**Justice Goldberg, for the Court.**  This case came before the Supreme Court on appeal, by the defendant, Rhode Island Brotherhood of Correctional Officers (RIBCO), from a Superior Court order granting a motion by the plaintiff, State of Rhode Island Department of Corrections (DOC), to vacate an arbitration award.  The RIBCO contends that the Superior Court erred in vacating the arbitration award.  For the reasons set forth herein, we affirm.

**Facts and Travel**

On March 2, 2009, the DOC Chief Inspector Aaron Aldrich (Inspector Aldrich) and Warden Stephen Boyd received information that two officers, Gene Davenport (Officer Davenport) and James Maddalena (Officer Maddalena), were smoking marijuana in a department vehicle while on duty.  When Inspector Aldrich approached the vehicle, he saw that Officer Davenport was alone; he noticed a strong odor of marijuana smoke emanating from the vehicle; and he observed that Officer Davenport's eyes were bloodshot.  Officer Davenport subsequently confessed to smoking marijuana while assigned to perimeter security—one of the few posts at

- 1 -

the DOC where a correctional officer is armed with a weapon—and was escorted to a captain's office for questioning.[1]  Officer Davenport admitted that Officer Maddalena had been in the vehicle while he smoked the marijuana, but he said that Officer Maddalena had not done so.

The Rhode Island State Police were contacted and conducted an investigation.  After interviewing Officer Davenport, the police questioned Officer Maddalena.  He was not truthful.  Initially, Officer Maddalena, an officer with approximately twenty-eight years of experience, admitted to being in the vehicle with Officer Davenport but denied seeing him smoke marijuana.  Inspector Aldrich also interviewed Officer Maddalena, who continued to deny that he had seen his fellow officer smoke marijuana that day.  It was not until Inspector Aldrich informed Officer Maddalena that a witness had observed Officer Davenport smoking marijuana while Officer Maddalena was in the vehicle that Officer Maddalena finally admitted the truth—that Officer Davenport was smoking marijuana, in his presence, while on duty.

Officer Maddalena was placed on administrative leave with pay, and a pre-disciplinary hearing was held on April 8, 2009.  Officer Maddalena was charged on his failure to report a fellow correctional officer smoking marijuana on duty, his dishonesty during an interview with the Rhode Island State Police, and his dishonesty during an interview by the DOC's Office of Inspections.  Director Ashbel T. Wall, II (Director Wall) subsequently notified Officer Maddalena, in writing, that he was being terminated from employment with the DOC.  Director Wall stated that Officer Maddalena's "conduct [was] contrary to the standards of conduct required by the State of Rhode [Island] and the [DOC].  [His] actions call[ed] into question [his] judgment and ethical standards and, therefore, [his] ability to perform [his] job with integrity."  The RIBCO immediately filed a grievance on behalf of Officer Maddalena, in accordance with

---

[1] It is undisputed that Officer Davenport had, in fact, been armed with a loaded shotgun and handgun while smoking marijuana on duty.

its Collective Bargaining Agreement (CBA), contending that he was terminated without just cause.

More than one year later, the matter proceeded to arbitration on July 26, 2010. At the arbitration hearing, the issue in dispute was the following: "Was [Officer] Maddalena terminated with just cause? If not, what shall be the remedy?" At the hearing, Officer Maddalena declined to testify; however, RIBCO submitted a document that, according to the arbitrator, "purport[ed] to be a summary of applied discipline for 'dishonesty'" seeking to demonstrate that the DOC's history of discipline for dishonesty has not included termination. Inspector Aldrich, Rhode Island State Police Sergeant Benjamin Barney (Sergeant Barney), and Director Wall testified at the arbitration hearing on behalf of the DOC. Inspector Aldrich and Sergeant Barney testified to the substantive facts. Additionally, Inspector Aldrich and Director Wall testified about the critical importance of safety and security of perimeter posts and the extensive training officers receive on the need to report threats to the institutions' security promptly and the duty to report any on-duty criminal conduct. Director Wall also testified that the DOC must have trust and confidence in the honesty, judgment, and reliability of its officers. Specifically, Director Wall noted that any lapse in areas relating to safety and security can lead to serious, if not deadly, consequences.

In analyzing the document submitted by RIBCO, the arbitrator proceeded to determine whether Officer Maddalena's punishment—termination—was "reasonable." The arbitrator noted that

> "[i]f, over an extended period of time, management has responded to a particular type of offense with a range or band of discipline based on the individual circumstances and severity of a case, an arbitrator would be hard[-]pressed to go outside that defined spectrum of penalties unless the offense itself is significantly outside said spectrum."

The arbitrator then proceeded to compare and contrast the cases contained in RIBCO's document with the conduct of Officer Maddalena. After rejecting most of the cases in the document, the arbitrator focused on a single incident concerning Captain Michael Martufi, an officer who had been aware that a co-worker had engaged in criminal activity, lied to a DOC inspector about the criminal activity on two occasions, warned the co-worker of the DOC's investigation, and was not terminated. The arbitrator also credited the testimony of the DOC witnesses and specifically found Director Wall's testimony to be "compelling" and "convincing." Nevertheless, the arbitrator determined that "there was not just cause for the termination of [Officer] Maddalena[,]" because terminating an officer for dishonesty was not in concert with the DOC's history of discipline. Instead, the award provided that Officer Maddalena be suspended without pay for sixty days and "be made whole for lost wages and benefits less the sixty * * * day suspension without pay * * *."

On November 19, 2010, the DOC filed a petition in Providence County Superior Court, seeking to vacate the arbitration award. The RIBCO responded on November 29, 2010, with a motion to confirm the arbitration award. The DOC argued that the arbitrator exceeded his powers by substituting his judgment for that of the director of the DOC and that the trial justice was not precluded from vacating the award due to a recent amendment to G.L. 1956 § 42-56-10, (P.L. 2007, ch. 523, § 1), the section of the General Laws that enumerates the powers of the director of the DOC. The RIBCO countered that the arbitrator's determination that the dispute was arbitrable was supported by statutory and contractual authority and that the arbitrator's findings and conclusions were rationally based on the arbitrator's evaluation of the evidence and pertinent law.

After reviewing the memoranda of the parties, a justice of the Superior Court granted the DOC's motion to vacate the arbitration award and denied RIBCO's motion to confirm.[2]  The trial justice determined (1) that the dispute was arbitrable—in accordance with § 42-56-10(24); and (2) that the arbitrator exceeded his authority and reached an irrational result because his "decision was based upon a manifest disregard of the [CBA]."  The RIBCO timely appealed.

**Standard of Review**

In Rhode Island, there is "a strong public policy in favor of the finality of arbitration awards." Berkshire Wilton Partners, LLC v. Bilray Demolition Co., 91 A.3d 830, 834 (R.I. 2014) (citing North Providence School Committee v. North Providence Federation of Teachers, Local 920, American Federation of Teachers, 945 A.2d 339, 344 (R.I. 2008)).  Accordingly, "[j]udicial review of arbitration awards is 'statutorily prescribed and is limited in nature.'" Wheeler v. Encompass Insurance Co., 66 A.3d 477, 480 (R.I. 2013) (quoting Buttie v. Norfolk & Dedham Mutual Fire Insurance Co., 995 A.2d 546, 549 (R.I. 2010)).

"Moreover, a court has no authority to vacate an arbitration award based upon a mere error of law." State Department of Corrections v. Rhode Island Brotherhood of Correctional Officers, 64 A.3d 734, 740 (R.I. 2013).  "If the award 'draws its essence from the contract' and reflects a 'passably plausible interpretation of the contract,' a reviewing court must confirm the award." Id. (quoting Cumberland Teachers Association v. Cumberland School Committee, 45 A.3d 1188, 1192 (R.I. 2012)).

However, under G.L. 1956 § 28-9-18(a), an arbitration award in labor disputes must be vacated:

---

[2]  Before the trial justice, both parties waived argument and relied solely on their memoranda.

> "(1) When the award was procured by fraud[;] (2) Where the arbitrator or arbitrators exceeded their powers, or so imperfectly executed them, that a mutual, final, and definite award upon the subject matter submitted was not made[; or] (3) If there was no valid submission or contract, and the objection has been raised under the conditions set forth in § 28-9-13."

"Otherwise, '[t]he court has no authority to vacate the arbitrator's award absent a manifest disregard of a contractual provision, a completely irrational result, a decision that is contrary to public policy, or an award that determined a matter that was not arbitrable in the first place.'" Rhode Island Brotherhood of Correctional Officers, 64 A.3d at 739 (quoting Cumberland Teachers Association, 45 A.3d at 1192).

## Discussion

### Arbitrability

Before this Court addresses the merits of the trial justice's decision to vacate the arbitration award, we must first decide whether the dispute is arbitrable. The RIBCO asserts that the DOC did not properly raise the issue of arbitrability because it did not appeal from that part of the trial justice's decision declaring the dispute to be arbitrable, and it further contends that, if the issue properly was raised, the trial justice's decision on substantive arbitrability was correct. The DOC responds that it did properly raise the issue of arbitrability, and it contends that the trial justice's decision on substantive arbitrability was, however, incorrect.

We note at the outset that, "like subject matter jurisdiction, the question of arbitrability may be raised by the parties at any time * * *." Woonsocket Teachers' Guild, Local 951, AFT v. Woonsocket School Committee, 770 A.2d 834, 837 (R.I. 2001). Here, the DOC raised the issue of arbitrability to the trial justice in its memorandum in support of its motion to vacate the arbitration award and argued the question of arbitrability before this Court, in its brief and at oral

- 6 -

argument. We, therefore, are satisfied that the question of arbitrability is appropriately before us. See id.

Next, we turn to the issue of whether the trial justice erred in determining that the grievance was substantively arbitrable. "A duty to arbitrate a dispute arises only when a party agrees to arbitration in clear and unequivocal language, and even then, the party is only obligated to arbitrate issues that it explicitly agreed to arbitrate." State Department of Corrections v. Rhode Island Brotherhood of Correctional Officers, 866 A.2d 1241, 1247 (R.I. 2005). This Court reviews arbitrability determinations de novo. See Sacco v. Cranston School Department, 53 A.3d 147, 150 (R.I. 2012).

Here, in concluding that the dispute was substantively arbitrable, the trial justice determined that § 42-56-10(24), which purports to limit the judiciary's review of arbitration awards involving the authority of the director of the DOC, was, in fact, a clear mandate that this dispute was arbitrable. This Court is of the opinion that the trial justice improperly relied on subsection (24) of § 42-56-10 when determining arbitrability. Nevertheless, although the trial justice's reliance on subsection (24) was improper, we affirm the trial justice's arbitrability determination on other grounds.[3] See State v. Covington, 69 A.3d 855, 867 n.10 (R.I. 2013) (recognizing this Court's authority to affirm a trial justice on alternate grounds).

---

[3] As this Court ruled in State Department of Corrections v. Rhode Island Brotherhood of Correctional Officers, 64 A.3d 734, 741 n.9 (R.I. 2013), "[b]ecause our conclusion on arbitrability has a different basis, and because of the well-settled doctrine of constitutional avoidance, we need not decide whether [G.L. 1956] § 42-56-10(24) violates the principle of separation of powers. See In re Brown, 903 A.2d 147, 151 (R.I. 2006) ('Neither this Court nor the Superior Court should decide constitutional issues unless it is absolutely necessary to do so.')."

The RIBCO contends that the grievance in this case was arbitrable because § 28-9-1[4] and the CBA provide that grievances regarding termination are subject to arbitration. The DOC responds and asserts that, pursuant to § 42-56-10, the DOC's responsibility for the security of the Adult Correctional Institutions takes "precedence over the authority of an arbitrator to modify a penalty where such central issues as safety and security and employee discipline are concerned" and that the trial justice erred in finding this dispute arbitrable.

Article XVI, section 16.1 of the CBA specifically states that "[i]t is agreed that [the DOC] may dismiss, demote or suspend an employee for just cause." Section 16.4, which must be read in conjunction with section 16.1, states that "[i]f * * * the employee or [RIBCO] so affected notifies the [DOC,] * * * he may have his case reviewed in accordance with the grievance and arbitration procedure set forth in this Agreement." It is therefore apparent that the parties have agreed in the CBA that a grievance regarding the DOC's just-cause determination is arbitrable.

Although § 42-56-10(2) declares that the DOC is responsible for "[m]aintain[ing] security, safety, and order at all state correctional facilities" and that the DOC may discharge employees, the statute does not specify that employee disciplinary decisions are not arbitrable in accordance with the terms of the CBA. Accordingly, we turn to the merits of this controversy.

---

[4] General Laws 1956 § 28-9-1 states, in pertinent part, the following:

> "Unless the parties agree otherwise in writing that the arbitrator shall have no authority to modify the penalty imposed by the employer in the arbitration of matters relating to the disciplining of employees, including, but not limited to, termination, suspension, or reprimand, the arbitrator shall have the authority to modify the penalty imposed by the employer and/or otherwise fashion an appropriate remedy."

**The Arbitration Award**

The next issue on appeal is whether the trial justice erred in her conclusion that the arbitration award was irrational and in granting the DOC's motion to vacate. The RIBCO contends that the trial justice improperly relied on the management-rights clause, Article IV, section 4.1 of the CBA in determining that the DOC director's authority to discharge employees trumped the just-cause provision of the CBA and that the trial justice erred in finding that the arbitration award was irrational. In response, the DOC argues that the trial justice did not err in concluding that the arbitrator manifestly disregarded the contract language of the management-rights clause in the CBA and that the trial justice did not err in determining that the arbitration award was irrational.

After a thorough review of the record, we are of the opinion that the arbitrator substituted his judgment as to the appropriate disciplinary action for that of the director of the DOC. The arbitrator's conclusion, therefore, is inconsistent with § 42-56-10, which outlines the powers of the director "in light of the director's nondelegable authority to maintain security, safety, and order at all state correctional facilities." State Department of Corrections v. Rhode Island Brotherhood of Correctional Officers, 725 A.2d 296, 298 (R.I. 1999) (Riel). Importantly, section 4.1B. of the CBA grants the DOC director "the exclusive right * * * to suspend, demote, discharge or take other disciplinary action against such employees[.]"

In this case, the arbitrator was asked to resolve two issues: (1) whether the DOC had just cause to terminate Officer Maddalena; and (2) if the DOC did not have just cause, determine an appropriate remedy. The arbitrator decided that the DOC did not have just cause to terminate Officer Maddalena and that a sixty-day suspension without pay, rather than termination, was an adequate remedy. First, the arbitrator addressed the level of discipline in a just-cause review and

noted that, generally, arbitrators utilize the reasonableness standard when determining whether a "punishment fit[s] the crime." Specifically, the arbitrator stated that arbitrators "give due/significant deference to what the Employer has, through its history of applied discipline, defined as an appropriate level of discipline."

Next, the arbitrator found it necessary to look outside of the CBA and referred to the RIBCO document which purported to be a summary of some of the DOC's past disciplinary cases involving dishonesty. Before undertaking a comparison of those cases to the case at hand, the arbitrator noted numerous limitations to the usefulness of utilizing prior DOC disciplinary cases, including the fact "that the sketchy facts contained in [the document submitted by RIBCO] about each [case] are insufficient to draw a conclusion as to the comparability with the case of Officer Maddalena." Undaunted by these drawbacks, however, the arbitrator focused on a single instance of past discipline and anchored his conclusion on this singular incident.

The arbitrator declared that he was "convinced that there is no doubt that Officer Maddalena knew exactly what Officer Davenport was smoking[, marijuana]." The arbitrator went on to find Director Wall's testimony "compelling where he described the need for the [DOC] to take action against any threat to safety and security of the institution." Further, the arbitrator noted that

> "Director Wall spoke convincingly of the need for the [DOC] to be able to place trust in the honesty, judgment, and reliability of its employees. The nature of the [DOC's] business is that lapses in any of those areas relating to safety and security can lead to serious, if not deadly consequences."

Despite the credence the arbitrator assigned to the unrebutted and overwhelming evidence submitted by the DOC, the arbitrator concluded that there was no just cause for termination and proceeded to formulate his own remedy.

This Court has stated that "the authority of an arbitrator is not 'unbridled[,]'" and "[a]n arbitrator has a duty to resolve a dispute based on the relevant provisions in the CBA." Woonsocket Teachers' Guild, Local 951, AFT, 770 A.2d at 839 (quoting Rhode Island Council 94, AFSCME, AFL-CIO v. State, 714 A.2d 584, 588 (R.I. 1998)). An arbitration award will be vacated if an arbitrator "exceed[ed] his or her powers by interpreting a CBA in such a way that it contravenes state law or other public policies that are not subject to alteration by arbitration." State Department of Corrections v. Rhode Island Brotherhood of Correctional Officers, 867 A.2d 823, 829 (R.I. 2005).

Here, the arbitrator did not resolve the dispute based on any provisions in the CBA. In fact, the arbitrator decided—improperly we conclude—that, because the CBA did not list offenses and corresponding penalties, he would not rely on the CBA in making his decision and instead would "look elsewhere for guidance on this question" to reach this result. Not only is the CBA pertinent to the determination of just cause in this case, the arbitrator's failure to consider its terms was a manifest disregard of the contract.

The Management Rights section of the CBA, specifically section 4.1A., provides that

> "the employer shall have the <u>exclusive right</u>, subject to the provisions of this [CBA] and <u>consistent with applicable laws and regulations</u>: * * * To hire, promote, transfer, assign, and retain employees in positions within the bargaining unit, and to suspend, demote, discharge or take other disciplinary action against such employees[.]" (Emphasis added.)

The arbitrator wholly overlooked this section of the CBA in his decision. Because this Court has declared it to be "an abuse of an arbitrator's power pursuant to § 28-9-18(a)(2)" "if an award fails to 'draw its essence from the agreement * * *[,]'" we are of the opinion that the arbitrator here abused his power in determining that the DOC director lacked just cause without taking into consideration relevant portions of the CBA. See Woonsocket Teachers' Guild, Local 951, AFT,

- 11 -

770 A.2d at 839 (quoting <u>State Department of Children, Youth and Families v. Rhode Island Council 94, American Federation of State, County, and Municipal Employees, AFL-CIO</u>, 713 A.2d 1250, 1253 (R.I. 1998)).

Significantly, as this Court previously has noted:

> "the United States Supreme Court has held in other contexts that problems which 'arise in the day-to-day operation of a corrections facility are not susceptible of easy solutions. Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'" <u>Laurie v. Senecal</u>, 666 A.2d 806, 809 (R.I. 1995) (quoting <u>Bell v. Wolfish</u>, 441 U.S. 520, 547 (1979)).

The facts of this case, which are not in dispute, establish that Officer Maddalena, a sworn officer, accompanied a fellow officer smoking marijuana in a DOC vehicle while working at a security post—while armed with a loaded shotgun and handgun—and continuously lied to the Rhode Island State Police and the DOC investigation officers about his being in the vehicle and observing the wrongful conduct. The arbitrator referenced the DOC's testimony and specifically found Director Wall's testimony regarding the need for the DOC to take action against any threat to safety and security of the institution to be compelling and convincing, yet proceeded to look outside the CBA to justify his result.

In <u>City of East Providence v. United Steelworkers of America, Local 15509</u>, 925 A.2d 246, 250 (R.I. 2007), where an animal-control supervisor was terminated by the City of East Providence for keeping a wild and rabid raccoon at the city kennel and, therefore, putting others' lives at great risk, the following questions were put to an arbitrator: "Did the City have just cause to suspend and terminate [an employee]? If not, what shall the remedy be?" <u>Id.</u> at 256. In <u>City of East Providence</u>, the arbitrator found that the city had just cause for termination, but then

decided that a different remedy was more appropriate. Id. This Court determined, however, that the arbitrator had acted irrationally, and we declared that "[o]nce the arbitrator found just cause, he exceeded his authority by requiring the city to reinstate [the employee] in another position." Id. In the case at bar, the arbitrator reached an irrational just-cause determination and then proceeded to exceed his authority in fashioning his own remedy. Accordingly, we are of the opinion that the trial justice was correct in vacating the arbitration award.

We pause to note that, although RIBCO asserts that the trial justice improperly relied on the management-rights clause of the CBA in determining that the DOC director's authority to discharge employees trumped the just-cause provision of the CBA, we do not agree with this characterization of the trial justice's determination. The trial justice concluded that the arbitrator exceeded his authority when he manifestly disregarded the management-rights provision of the CBA, not that the management-rights provision trumped the just-cause provision. We agree with her conclusion.

Therefore, this Court affirms the trial justice's conclusions that the arbitrator manifestly disregarded the CBA and that the arbitration award was irrational.

### Constitutionality of G.L. 1956 § 42-56-10(24)

Lastly, both parties have addressed the constitutionality of a 2007 amendment (P.L. 2007, ch. 523, § 1) to § 42-56-10, which added subsection (24) to the statute. Section 42-56-10(24) states:

> "Notwithstanding the enumeration of the powers of the director as set forth in this section, and notwithstanding any other provision of the general laws, the validity and enforceability of the provisions of a collective bargaining agreement shall not be contested, affected, or diminished, nor shall any arbitration be vacated, remanded or set aside on the basis of an alleged conflict with this section or with any other provision of the general laws."

- 13 -

This Court has "recognize[d] that G.L. 1956 § 28-[9]-1 empowers an arbitrator to modify a penalty imposed by an employer unless the parties agree in writing that the arbitrator shall have no such authority." Riel, 725 A.2d at 298; see also State v. Rhode Island Brotherhood of Correctional Officers, 819 A.2d 1286, 1289 (R.I. 2003). We also have stated, however, that "[t]his statute must be harmonized with those provisions set forth in § 42-56-10, which outlines the powers of the director of the [DOC], in light of the director's nondelegable authority to maintain security, safety, and order at all state correctional facilities." Riel, 725 A.2d at 298. The RIBCO now counters that the amendment to § 42-56-10, adding subsection (24), radically altered this area of law such that now the director's authority regarding security is subject to review by an arbitrator.[5] The DOC counters that RIBCO's "argument is in essence [that] arbitration awards are no longer reviewable or subject to alteration by the judiciary" and that, therefore, the amendment is unconstitutional as violative of the separation of powers doctrine.

This Court is mindful of the director's nondelegable responsibility concerning safety and security of the state prison, and we do not retreat from our previous holdings in any way. However, because we agree with the trial justice that the arbitration award was irrational, we need not venture into the arena of nondelegation and separation of powers,[6] nor reach a determination on the constitutionality of the amendment.

---

[5] The RIBCO also contends that the constitutionality of § 42-56-10(24) is not properly before the Court because the trial justice did not address the constitutional argument, the DOC did not file a cross-appeal with respect to the constitutionality issue, and the DOC failed to provide the appropriate notice, which RIBCO suggested is required in Rule 32 of the Supreme Court Rules of Appellate Procedure. Because the Court is not addressing the constitutionality of § 42-56-10(24), it is unnecessary to address these peripheral issues.

[6] The nondelegation doctrine, derived from the Rhode Island Constitution, "arises when it is contended that there has been an impermissible delegation of legislative power to an administrative agency." Moreau v. Flanders, 15 A.3d 565, 584 (R.I. 2011). Whereas, "[t]he separation of powers doctrine prohibits the usurpation of the power of one branch of government

- 14 -

However, we pause to acknowledge, as stated in <u>Riel</u>, that we remain steadfast in our judgment that "[t]he Legislature could not have intended to make the paramount disciplinary function of the director subject to the caprice of an arbitrator." <u>Riel</u>, 725 A.2d at 299. Further, we are of the opinion that, if the Legislature intended to alter or diminish the director's authority to "suspend, demote, discharge, or take other necessary disciplinary action" in order to secure prison safety and security, it would have done so in a clearer and more explicit manner. Section 42-56-10(7); <u>see</u> <u>also</u> <u>State v. Hazard</u>, 68 A.3d 479, 492 (R.I. 2013) (stating that, if the General Assembly intended to regulate weapons that cannot expel a projectile or be readily converted to do so in the Firearms Act, "it was incumbent upon the General Assembly to express that intent clearly and unambiguously").

## Conclusion

For the reasons stated, we affirm the judgment of the Superior Court, to which we remand the record in this case.

---

by a coordinate branch of government." <u>Woonsocket School Committee v. Chafee</u>, 89 A.3d 778, 793 (R.I. 2014) (quoting <u>Moreau</u>, 15 A.3d at 579). "Functionally, the doctrine may be violated in two ways. One branch may interfere impermissibly with the other's performance of its constitutionally assigned function. * * * Alternatively, the doctrine may be violated when one branch assumes a function that more properly is entrusted to another." <u>Chafee</u>, 89 A.3d at 793 (quoting <u>City of Pawtucket v. Sundlun</u>, 662 A.2d 40, 58 (R.I. 1995)).

**Justice Flaherty, with whom Justice Robinson joins, dissenting in part and concurring in part.** We respectfully, but nonetheless forcefully, dissent from the holding of the majority in this case. As an initial matter, we agree with the majority's conclusion, if not entirely with its rationale, that the grievance filed by the Rhode Island Brotherhood of Correctional Officers (RIBCO) on behalf of Officer Maddalena was arbitrable. However, that is where our paths diverge.

The majority holds that, in fashioning his award, the arbitrator substituted his judgment for the judgment of the director of the Department of Corrections (the DOC). In coming to that conclusion, it is our opinion that the majority completely misunderstands and misstates the role of an arbitrator. The arbitrator here was tasked by the parties, by submission and by agreement, to evaluate evidence presented to him, listen to the arguments of the parties, and make a decision based on the evidence and the relevant contractual language.[1] That is exactly what he did. In his award, the arbitrator found: (1) the CBA did not contain a negotiated list of offenses and corresponding penalties; (2) the DOC had never before punished dishonesty by the termination of employment; (3) the director's interest in the safety and security of the institution was compelling; (4) Officer Maddalena had twenty-seven years of "discipline-free service"; (5) there was not just cause for the termination of Officer Maddalena; and (6) his termination should be revoked and replaced by a sixty-day disciplinary suspension without pay.

In an opinion that, in our view, sets the law on its head, the majority then simply substitutes its judgment for the judgment of the arbitrator. See North Providence School Committee v. North Providence Federation of Teachers, Local 920, American Federation of

---

[1] "The parties to an arbitration are free by their submission to clothe the arbitrators with such powers as they may deem it proper to confer, provided that they do not violate any rule of law." 5 Am. Jur. 2d Arbitration and Award § 24 at 539 (1962).

Teachers, 945 A.2d 339, 344 (R.I. 2008) ("The authority of the courts in this jurisdiction to review an arbitral award is statutorily prescribed and is limited in nature."); see also First State Insurance Co. v. National Casualty Co., 781 F.3d 7, 8 (1st Cir. 2015) ("A party that implores a court to vacate an arbitration award normally faces a steep uphill climb: the scope of judicial review of arbitration awards is 'among the narrowest known in the law.'"); Purvis Systems, Inc. v. American Systems Corp., 788 A.2d 1112, 1114 (R.I. 2002) ("the role of the judiciary in the arbitration process is 'extremely limited'"); Town of North Providence v. Local 2334 International Association of Fire Fighters, AFL-CIO, 763 A.2d 604, 606 (R.I. 2000) ("it is only when an arbitration award fails to embody even a 'passably plausible' interpretation of the contract that it must be struck down by the [c]ourt upon review"); Council 94, American Federation of State, County, and Municipal Employees AFL-CIO v. State, 475 A.2d 200, 203 (R.I. 1984) ("judicial reversal of an arbitrator's award solely on the ground of a reviewing court's disagreement with [the arbitrator's] construction of the contract is prohibited"); accord United Paperworkers International Union, AFL-CIO v. MISCO, Inc., 484 U.S. 29, 36 (1987) (explaining that courts "play only a limited role" when reviewing an arbitrator's decision and "are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract"); United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 599 (1960) ("It is the arbitrator's construction [of the CBA] which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his."); United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 568 (1960) (explaining that, when reviewing an arbitrator's award, courts "have no business weighing the merits of the grievance, considering

whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim").

The issue submitted to the arbitrator, by agreement of the parties, was as follows: "Was James Maddalena terminated with just cause? If not, what shall be the remedy?" The majority appears to fault the arbitrator for "f[inding] it necessary to look outside of the CBA." However, in our opinion, no arbitrator could construct an award if he merely read the CBA. It is a core function of an arbitrator to evaluate the evidence, consider precedent, and then apply what has come before him to the existing contract between the parties. See Council 94, American Federation of State, County, and Municipal Employees AFL-CIO, 475 A.2d at 203 (explaining that the proper sources for an arbitrator to consider include "the contract and the common law of the shop"); see also United Steelworkers of America v. Warrior and Gulf Navigation Co., 363 U.S. 574, 581-82 (1960) ("The labor arbitrator's source of law is not confined to the express provisions of the contract, as the industrial common law—the practices of the industry and the shop—is equally a part of the collective bargaining agreement although not expressed in it."); Enterprise Wheel and Car Corp., 363 U.S. at 597 (explaining that, in formulating an award, an arbitrator "may of course look for guidance from many sources"); 6 C.J.S. Arbitration § 123 at 196 (2004) ("[a]rbitrators are not confined to the testimony of witnesses or matters appearing of record but may avail themselves of their own knowledge and information"); 1 Tim Bornstein et al., Labor and Employment Arbitration, § 19.03[2] at 19-11 (1994) ("for disciplinary actions to be sustained, the arbitrator must be persuaded that the discipline imposed is consistent with prior treatment of like offenses"). Indeed, in this case, the evidence and documents submitted to the arbitrator came into the hearing without objection.

As the majority notes, the arbitrator's award characterized the testimony of Director Wall as "compelling." However, that adjective was employed with respect to the issue of whether discipline was appropriate and should be imposed, not with respect to whether there was just cause to terminate the grievant. That, after all, was the issue before the arbitrator.

The majority then castigates the arbitrator for "formulat[ing] his own remedy." Again, this is a core function of an arbitrator and, particular to this case, it is precisely what he was asked to do by the parties. See MISCO, Inc., 484 U.S. at 38 ("where it is contemplated that the arbitrator will determine remedies for contract violations that he finds, courts have no authority to disagree with [the arbitrator's] honest judgment in that respect * * * as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority"); Burchell v. Marsh, 58 U.S. 344, 349 (1854) ("If the award is within the submission, and contains the honest decision of the arbitrators, after a full and fair hearing of the parties, a court of equity will not set it aside for error, either in law or fact."). Indeed, the United States Supreme Court has said:

> "When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies. There the need is for flexibility in meeting a wide variety of situations. The draftsmen [of the CBA] may never have thought of what specific remedy should be awarded to meet a particular contingency." Enterprise Wheel and Car Corp., 363 U.S. at 597.[2]

The majority further criticizes the arbitrator because he looked outside the four corners of the collective-bargaining agreement for guidance because no provision of the labor agreement set forth a penalty for the acts of the grievant. However, the majority does not hesitate to leap to

---

[2] See also 6 C.J.S. Arbitration § 103 at 176 (2004) ("The courts look to the arbitration agreement to determine the scope of the arbitrator's powers in rendering an award, and in the absence of clearly restrictive language, great latitude must be allowed in framing of an award and fashioning of an appropriate remedy.")

outside sources itself, including Rhode Island statutes and previous holdings of this Court, to decide that the arbitrator was irrational and that he exceeded his power by manifestly disregarding the CBA.

In our view, the major flaw in the majority's decision is that it is myopically entranced by just some of the wording in Article IV, section 4.1 of the CBA, the so-called management-rights clause. There is no question that section 4.1 recognizes broad powers in the director, but those powers are not unfettered. Instead, they are circumscribed in that they are explicitly said to be "subject to the provisions of this Agreement." Id. Indeed, Article XVI, section 16.1[3] requires that discipline, including termination, will not be imposed in the absence of just cause. Further, section 16.4[4] gives an employee the right to contest whether the just-cause standard was reached in light of the punishment imposed, including the right to arbitrate the dispute if it has not been resolved at an earlier stage of the grievance process.

In reaching its decision, the majority, wrongly in our opinion, relies heavily upon two earlier decisions of this Court. The majority quotes extensively from Laurie v. Senecal, 666 A.2d 806, 809 (R.I. 1995), trumpeting this Court's language that "[p]rison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." However, that case involved the authority of prison authorities to force-feed an inmate who was attempting to starve himself. Id. at 808. It has absolutely

---

[3] Article XVI, section 16.1 of the CBA provides that "[i]t is agreed that an Appointing [A]uthority may dismiss, demote or suspend an employee for just cause."

[4] Section 16.4 of the CBA provides that "[i]f within two weeks of such dismissal, demotion, or suspension, the employee or the Brotherhood so affected notifies the Appointing Authority in writing that he has been unfairly treated and gives his reasons therefore, he may have his case reviewed in accordance with the grievance and arbitration procedure set forth in this Agreement."

nothing to do with the interpretation of an employee's rights under a CBA and is utterly inapposite to the situation before the Court.

The majority also relies heavily on this Court's opinion in City of East Providence v. United Steelworkers of America, Local 15509, 925 A.2d 246 (R.I. 2007). There, the Court decided that an arbitrator had acted irrationally when, charged with deciding the same issue as was the arbitrator in this case, first found that there was just cause to terminate an employee, but then inexplicably ordered that the employee be brought back to work, even ordering that the grievant be reassigned to a different position. Id. at 256. We agree that in City of East Providence, the arbitrator was irrational because, having decided that there was just cause to fire the employee, he had absolutely no reason to address the question of remedy, much less to place the grievant in a position from which he had not been terminated. Id. It is noteworthy that the complete opposite situation is present in this case. Here, the arbitrator determined that there was not just cause for termination, thus triggering his second obligation to fashion an appropriate remedy. Respectfully, it is our opinion that City of East Providence could not possibly supply less foundation to the majority's analysis.

In summary, it is our opinion that the arbitrator carefully considered the case before him and rendered an award that was not only "passably plausible" but also drew its essence from the CBA. Town of North Providence, 763 A.2d at 606. It is completely irrelevant that this Court, hearing the case as the arbitrator did, might have reached a different conclusion. See North Providence School Committee, 945 A.2d at 345 n.10 ("Although it is possible that one or more of the members of this Court might not have reached the same result or engaged in the same process of reasoning as did the arbitrator in this case, the operative standard of review narrows the judicial role to that of determining whether the result reached by the arbitrator was irrational

- 21 -

or constituted a manifest disregard of the law."); <u>Rhode Island Council 94, AFSCME, AFL-CIO v. State</u>, 714 A.2d 584, 588 (R.I. 1998) (explaining that, when reviewing an arbitrator's decision, courts should "not reconsider the merits of an award despite allegations that it rests upon errors of fact or on a misinterpretation of the contract"). In our view, the majority has correctly stated the appropriate standard of review but then disregarded it and inserted its view of the case while at the same time jettisoning the opinion of the arbitrator.

## General Laws 1956 § 42-56-10(24)

We agree with the majority that it is unnecessary to reach the constitutional arguments raised by the DOC. However, and although the majority does not decide this case on the basis of statutory interpretation, we do not agree with the majority that § 42-56-10(24) is insufficiently clear and explicit.[5] In essence, the amendment simply says that nothing in the statutorily enumerated powers of the director shall be the basis for altering the terms of the CBA nor serve as a foundation for setting aside or vacating an arbitration award.[6] It seems clear to us that the General Assembly enacted this amendment in response to this Court's holdings in two earlier

---

[5] General Laws 1956 § 42-56-10(24) provides:

> "Notwithstanding the enumeration of the powers of the director as set forth in this section, and notwithstanding any other provision of the general laws, the validity and enforceability of the provisions of a collective bargaining agreement shall not be contested, affected, or diminished, nor shall any arbitration award be vacated, remanded or set aside on the basis of an alleged conflict with this section or with any other provision of the general laws."

[6] General Laws 1956 § 28-9-1 provides in pertinent part that:

> "Unless the parties agree otherwise in writing that the arbitrator shall have no authority to modify the penalty imposed by the employer in the arbitration of matters relating to the disciplining of employees, including, but not limited to, termination, suspension, or reprimand, the arbitrator shall have the authority to modify the penalty imposed by the employer and/or otherwise fashion an appropriate remedy."

- 22 -

cases.  See State Department of Corrections v. Rhode Island Brotherhood of Correctional Officers, 867 A.2d 823, 831 (R.I. 2005) (reversing a Superior Court decision to confirm an arbitrator's award that found that the grievant's termination lacked just cause because, in the Court's view, the arbitrator impermissibly substituted his judgment for that of the DOC director concerning the choice of discipline); State Department of Corrections v. Rhode Island Brotherhood of Correctional Officers, 725 A.2d 296, 298 (R.I. 1999) (holding that disciplinary decisions of the DOC director are not subject to arbitral review).  The Legislature is "presumed to know the state of existing law when it enacts or amends a statute."  Simeone v. Charron, 762 A.2d 442, 446 (R.I. 2000) (quoting Providence Journal Co. v. Rodgers, 711 A.2d 1131, 1134 (R.I. 1998)).  Further, it is well established that the Legislature "may amend a statute when it disagrees with a judicial interpretation, and such an amendment must be given effect."  1A Norman J. Singer & J.D. Shambie Singer, Sutherland Statutory Construction § 22:2 at 251 (7th ed. 2009).

For the foregoing reasons, we respectfully dissent from the majority's opinion in this case.


**TITLE OF CASE:** State of Rhode Island Department of Corrections v. Rhode Island Brotherhood of Correctional Officers.

**CASE NO:** No. 2013-142-Appeal.
(PM 10-6823)

**COURT:** Supreme Court

**DATE OPINION FILED:** May 14, 2015

**JUSTICES:** Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:** Associate Justice Maureen McKenna Goldberg

**SOURCE OF APPEAL:** Providence County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Sarah Taft-Carter

**ATTORNEYS ON APPEAL:**

For Plaintiff:  Kathleen M. Kelly, Esq.

For Defendant:  Carly B. Iafrate, Esq.